**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02525-WYD-NYW

GENSCAPE, INC.,

       Plaintiff,

v.

LIVE POWER INTELLIGENCE COMPANY NA, LLC, and
WILLIAM P. TOWNSEND,

       Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS COMPLAINT**

Plaintiff Genscape, Inc. respectfully requests that the Court deny the Rule 12(b)(6) Motion to Dismiss Complaint filed by Defendants Live Power Intelligence Company NA, LLC ("LPI") and William P. Townsend (collectively, "Defendants"), ECF 15, for the reasons set forth herein.

**INTRODUCTION**

For six years, Plaintiff Genscape employed Defendant Townsend in senior positions, granting him access to "a wide range of Genscape's confidential information that is crucial to the success of Genscape's business model." ECF 1, ¶¶ 15–17. The Complaint provides six specific examples of such confidential and trade secret information. *Id.* ¶ 17. After leaving Genscape, Townsend became Defendant LPI's CEO. *Id.* ¶¶ 22–23. Since then, Defendants have exploited Genscape's trade secret and confidential information to build LPI's competing business. *Id.* ¶¶ 24–27. This suit seeks to hold Defendants accountable for this misconduct.

Defendants' motion to dismiss should be denied. With respect to the trade secret claims, Defendants excise snippets of the Complaint to contend that Genscape has insufficiently pled the

trade secrets and Defendants' misappropriation. In fact, the Complaint specifically identifies six categories of trade secrets and details how Defendants misappropriated them. As to the contract claim, Defendants argue that the Confidentiality Agreement is unenforceable, but ignore the contractual language and applicable law. Finally, Defendants argue that the remaining state law claims are preempted, ignoring the law in this district rejecting this form of field preemption.

Defendants' request for dismissal "with prejudice" ignores the facts and the law. This is not a "third" Complaint in this case. While Genscape previously sued LPI for patent infringement and tortious interference, Genscape dismissed that case under Rule 41(a)(1)(A)(i) without prejudice. This is a ***new*** case, asserting new and different claims. These claims should not be dismissed at all, let alone dismissed with prejudice.

## BACKGROUND

Genscape provides comprehensive, real-time information about the production and flow of electricity to participants in the energy market. ECF 1, ¶¶ 11–13. It collects this data using thousands of magnetic sensors placed at strategic points near power plants and transmission lines. *Id.* ¶ 12. To build its business, Genscape invested enormous resources to develop technologies, investigate power plants and transmission lines, gain access to strategic locations for its monitors, develop customer relationships, and obtain market intelligence. *Id.* ¶¶ 13–14. From 2009 to 2015, Defendant Townsend served in management positions at Genscape, wherein he learned Genscape's trade secrets and other confidential information. *Id.* ¶¶ 15–17. Townsend entered into a Confidentiality Agreement to keep this information secret. *Id.* ¶¶ 20–21; *see* ECF 1-1.

Townsend left Genscape in 2015 and became LPI's CEO in January 2017. ECF 1, ¶¶ 22–23. As set forth in detail in the Complaint, Defendants immediately began exploiting Townsend's

knowledge of Genscape's trade secrets and confidential information to build and advance LPI's business. *Id.* ¶¶ 23–27. Defendants' misconduct has caused ongoing damage to Genscape: because LPI's entire business model depends on information stolen from Genscape, the longer LPI uses that information the more damage it causes. *Id.* ¶¶ 28–29.

In 2017, Genscape filed a lawsuit against LPI asserting that LPI infringed two Genscape patents related to monitoring technology, and that LPI was tortiously interfering with Genscape's contractual relations when it placed its sensors on the property of landowners from whom Genscape had obtained exclusive easements. *Genscape v. LPI*, No. 17-cv-02452 (D. Colo. Oct. 12, 2017). Genscape later discovered that Defendants' misconduct was much more vast than it previously knew, and that Defendants have been misusing "Genscape's trade secrets and other confidential information to put [LPI] in a position in the energy-data market that it ha[s] not earned through its own time and effort." ECF 1, ¶ 23. When LPI refused to consent to Genscape amending its complaint to add Townsend as a defendant and add trade secret and related claims, Genscape dismissed the pending case pursuant to Rule 41(a)(1)(A)(i) and filed this lawsuit. None of the previous claims were reasserted in this case; the claims before the Court are entirely new.

## ARGUMENT

### I. LEGAL STANDARD

In considering a motion under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded factual allegations . . . and view[s] these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124–25 (10th Cir. 2010). A complaint "need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Genscape's claims far exceed this standard.

## II.   THE MOTION TO DISMISS SHOULD BE DENIED

### A.   Genscape has adequately pled its trade secret claims.

No heightened pleading standard applies to trade secret claims. *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012). Courts only dismiss such claims for lack of specificity "***in the most extreme cases***." *Id*. (emphasis added).

#### 1.   Genscape has clearly identified its trade secrets.

Defendants complain that Genscape's Complaint "provides only vague, conclusory allegations of trade secrets" and "provides no facts describing what these [trade secrets] actually are." ECF 15, at 6. To try to support this assertion, Defendants selectively and misleadingly excise phrases from the Complaint's descriptions of the trade secrets and bury the rest. For example, Defendants omit key words and several lines from the Complaint to argue that Genscape simply claims "'methods and strategies' for identifying power plants and transmission lines" as a trade secret, complaining that this "vague and conclusory" allegation "provides no facts describing" the trade secret. *Id.* The words they cut provide those additional details:

(A)   Genscape's methods and strategies for identifying ***the most important*** power plants and transmission lines ***to monitor and finding the optimal location adjacent to those plants and lines for the placement of its sensors***. ***These methods involved, among other things, analyzing market demand for particular energy market related data, assessing specific customer data and requests, and performing technical feasibility analyses***. ***Both of these determinations—which sites to monitor and the optimal placement of the sensors for those sites—are essential for the proper functioning of the sensors and the marketability of the resulting data***.

ECF 1, ¶ 17(a) (emphases added to show words omitted by Defendants). The Complaint includes

five additional specific examples of trade secret information that Townsend learned while employed by Genscape, each of which Defendants misleadingly excerpt in their brief:

(B)   Lists that Genscape used to prioritize the best strategic placements for its monitors going forward and lists of sites that Genscape determined would be too difficult or costly to pursue, for various legal, geographic, or technological reasons.  Genscape synthesized a wide variety of internal information to create these lists, including market analysis, specific customer requests, and feasibility assessments from Genscape's field technicians.

(C)   Detailed knowledge of the capabilities and operation of Genscape's methods and technologies for collecting real-time information on power plant production.

(D)   Policies and strategies related to the pricing of its products, including the pricing model that the sales team used and the prices Genscape charged specific customers.

(E)   Data and intelligence gathered from Genscape's customer and potential customer base, including results from customer surveys, feedback regarding products and pricing, requests for specific changes to the functioning of the monitors, and information Townsend learned from his interactions with customers.

(F)   Detailed information collected by Genscape that tracked the extent to which customers accessed and used specific data available in Genscape's systems. Among other things, this data allowed Genscape to identify the most active users.

ECF 1, ¶ 17.

These detailed allegations are a far cry from those in the cases Defendants cite.  In *Mentz*, the court deemed too vague the plaintiff's bare identification of "trading information" as a trade secret.  *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz,* No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan 18, 2013).  And Genscape's allegations are much more detailed than those found ***sufficient*** in Bite Tech Inc. v. X2 Impact, Inc., No. C12-1267RSM, 2012 WL 13018749 (W.D. Wash. Dec. 21, 2012).  There, the Court held as sufficiently-pled trade secrets including "technology, research and development, future products, business plans and business partners."  *Id.* at *4.  Lastly, unlike the unpublished, out-of-circuit *Veronica Foods* case, the Complaint here alleges that Townsend learned Genscape's trade secrets through his high-level role

5

at the company and describes how Defendants have used them. *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *14–15 (N.D. Cal. June 29, 2017); ECF 1, ¶¶ 16–17, 26.

Genscape's specific trade secret allegations are sufficient under the law of this district. *See, e.g.*, *Zimmer Spine, Inc. v. EBI, LLC*, No. 10-cv-03112-LTB-CBS, 2011 WL 4089535, at *8–9 (D. Colo. Sept. 14, 2011) (denying motion to dismiss where the plaintiff's "generalized allegations" identified as trade secrets "marketing, sales, and advertising information, . . . organizational information, . . . [and] technical information"); *Cocona, Inc. v. Singtex Indus. Co.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *11 (D. Colo. Oct. 9, 2014) (denying motion to dismiss where alleged trade secrets included confidential methods and data).

Defendants' only other comment on the sufficiency of Genscape's trade secret allegations is to assert that the locations of a few of Genscape's thousands of monitors can be ascertained, and therefore cannot be a trade secret. ECF 15, at 6–7. But whether a person could theoretically stumble on a single Genscape monitor while driving through a field does not render the ***collection of all monitor locations*** publicly available.[1]  *See, e.g.*, *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) (a combination of characteristics may be a trade secret even if "some of its components are well-known"). Nor would it have any bearing on any of the other trade secrets at issue—including, for example, lists of locations where Genscape had determined it could

---

[1] Nor do the three Genscape website pages that Defendants cite. ECF 15, at 7 n.2. Defendants' attempt to use these materials to prove a disputed factual issue on a motion to dismiss should be rejected. Judicially noticed documents cannot be used "to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Moreover, it is not possible to discern from the first link the particular power plants and transmission lines being monitored, and the other two links merely make announcements about two individual power plants. None of these render Genscape's entire collection of plants, lines, and monitors publicly available.

*not* place monitors based on its own detailed analyses. *See* ECF 1, ¶ 17(b).

### 2. Genscape has pled sufficient facts to show misappropriation.

Defendants fare no better in arguing that Genscape's misappropriation allegations are deficient. Defendants assert that "[t]he Complaint contains no factual averments of disclosure or use, or of any knowledge that an alleged trade secret was acquired by improper means." ECF 15, at 7–8. Defendants are wrong; these averments are in the Complaint. In ¶ 26, the Complaint alleges that Defendants misused each trade secret identified in ¶ 17 and explains how. Thus, for example, as to Genscape's methods and strategies for identifying what plants and lines to monitor, the Complaint explains how they have been used: "[o]n information and belief, Defendants have been using these trade secrets to make decisions regarding which power plants and transmission lines to monitor as well as the optimal placement of monitors," as well as "to inform strategic plans regarding how to expand [LPI's] business." ECF 1, ¶ 26(a). As to the capabilities and operation of Genscape's methods and technology, the Complaint also details the use by LPI of Genscape's trade secret calibration process: "LPI's calibration process closely mirrors Genscape's own process, which is a carefully protected trade secret." *Id.* ¶ 26(c). As to pricing, the Complaint states: "Defendants have been using these trade secrets to target specific market participants and to undercut Genscape's pricing." *Id.* ¶ 26(d). As to Genscape's data and customer intelligence, it states: "[o]n information and belief, Defendants have also been offering customers products based on the customer information developed by Genscape." *Id.* ¶ 26(e).

Notably, only some of the allegations are on information and belief; others are directly alleged. In any event, allegations on information and belief are both appropriate and sufficient. *Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-cv-01252-RBJ, 2015 WL 7450420, at

7

\*2 (D. Colo. Nov. 24, 2015) (*Twombly* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant" (citation omitted)).

It is not fatal that Genscape has not alleged that Defendants acquired the trade secrets "by improper means." ECF 15, at 7–8. Acquiring a trade secret by improper means is only one way to misappropriate it. *See Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1091–92 (D. Colo. 2016). A defendant is also liable for misappropriation if the defendant ***uses*** or ***discloses*** a trade secret knowing that it was acquired under a duty to maintain its secrecy or was derived through a person with such a duty. 18 U.S.C. § 1839(5)(B)(ii); Colo. Rev. Stat. § 7-74-102(2)(b)(II); Ky. Rev. Stat. § 365.880(2)(b)(2); *Alexander & Alexander, Inc. v. Frank B. Hall & Co., Inc.*, No. 88-A-1621, 1990 WL 8028, at \*14–15 (D. Colo. Jan. 31, 1990). Here, Townsend acquired Genscape's trade secrets pursuant to such a duty, and LPI derived them through Townsend.[2] ECF 1, ¶¶ 20–26.

Finally, citing a case where the only misappropriation allegation was that the defendant had hired a former employee of the plaintiff, Defendants claim that "the mere fact that Townsend now works for LPI does not support a plausible claim." ECF 15, at 7 (citing *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009)). It is not the "mere fact" that he works for LPI that is the basis for Genscape's claim. Townsend is LPI's CEO. Genscape alleges that he "controls LPI's decision-making and operations"; that he

---

[2] Defendants suggest that there is a timing issue because the DTSA became effective on May 11, 2016, and Townsend left Genscape in 2015. ECF 15, at 8 n.3. This is wrong; the alleged misuses of Genscape's trade secrets (that Genscape is aware of so far) occurred ***after*** Townsend joined LPI in 2017, and therefore ***after*** the DTSA went into effect. *See, e.g.*, *Adams Arms, LLC v. Unified Weapons Sys., Inc.*, No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394, at \*6 (M.D. Fla. Sept. 27, 2016) (allowing claim where misappropriation occurred after DTSA effective date).

and LPI knew that he was obligated not to use Genscape's trade secrets to further LPI's business; and that they used them nonetheless. *Id.* ¶¶ 22–25. His misappropriation is attributable to LPI. *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1076–77 (D. Colo. 2012); *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882, at *19 (D. Colo. May 23, 2008) (high-level employee did not "have to transmit [trade secret] information to anyone at" his new employer for the employer to "use" the trade secrets).

### B. Genscape has adequately pled its breach of contract claim.

Townsend signed a Confidentiality Agreement at Genscape that obligated him not to "disclose [certain] Confidential Information to any person" or "independently use the Confidential Information in any manner," even after he left Genscape. ECF 1-1, at 2. Townsend breached this contract by using Confidential Information, including trade secrets, to further LPI's business, and by disclosing the Confidential Information to others at LPI. ECF 1, ¶¶ 24, 26, 78–79.

Defendants first renew their unfounded assertion that the Complaint "provides no factual allegations" that Townsend used Genscape's confidential information, ECF 15, at 8–10. This is more of the same; Genscape did plead those factual allegations. *See, e.g.*, ECF 1, ¶ 26. Next, Defendants argue that the Confidentiality Agreement is unenforceable because it is so broad that it should be transformed into a non-compete agreement that would be unenforceable in other (random) jurisdictions. This is wrong on the facts and the law.

To start with, the Confidentiality Agreement here is appropriately narrow and focused on maintaining the confidentiality of Genscape's information. The contract defines "Confidential Information" to include, without limitation, "client list and contact information, . . . ideas, processes, concepts, written business materials, strategies, trade secrets[,] and other proprietary

9

and confidential information."[3] ECF 1, ¶ 20; *see* ECF 1-1, at 2. It protects against disclosure of "information and/or trade secrets which are confidential, which are the property of Genscape, and which are important to the continued success of Genscape's business operation." ECF 1-1 at 2. Like the provision the Tenth Circuit found enforceable in *Harvey Barnett*, the Confidentiality Agreement simply "preserves 'the valuable confidential information [Genscape] necessarily had to disclose to [Townsend] during the course of [his] employment.'" 338 F.3d at 1134.

Defendants attempt to convert the confidentiality agreement into a non-compete agreement, and then cite cases from irrelevant jurisdictions that happen to disfavor non-compete restrictions. ECF 15, at 8. This is a red herring: Genscape has sued for breach of a confidentiality agreement, not a non-compete agreement. Indeed, the Tenth Circuit rejected a similar argument on the grounds that a confidentiality provision—even a broad one that permanently prohibits disclosure of "any information concerning any matters affecting or relating to the business and trade secrets of" an employer—is enforceable, and not transformed into a "disguised restrictive covenant," if "the purpose of the confidentiality provision is to prevent [the employee] from divulging ***confidential*** information." *Harvey Barnett*, 338 F.3d at 1134; *see also Papa John's Int'l, Inc. v. Pizza Magia Int'l, LLC*, No. CIV.A. 3:00CV-548-H, 2001 WL 1789379, at \*3 (W.D. Ky. May 10, 2001).[4] That is precisely the purpose of the instant Confidentiality Agreement.

Defendants' reliance on cases from West Virginia and South Carolina where non-compete

---

[3] Defendants do not quote or discuss the actual definition of "Confidential Information" in their motion. Instead, they quote a different sentence and call that the "definition." ECF 15, at 8–9.

[4] Genscape was and is headquartered in Louisville, Kentucky, but Townsend primarily worked in Genscape's Boulder, Colorado office. ECF 1, ¶¶ 5, 52; ECF 1-1, at 2. The result is the same under Kentucky or Colorado law, so there is no need to conduct a choice-of-law analysis. *See Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1197–98 (D. Colo. 2012).

agreements were held unenforceable is apropos of nothing. There is no plausible argument that the contract would be governed by West Virginia or South Carolina law. And even if somehow the confidentiality provision here became a non-compete provision—which it has not—non-compete provisions are enforceable in these circumstances in Colorado and Kentucky. *See* Colo. Rev. Stat. § 8-2-113(2) (excepting "[e]xecutive and management personnel and officers" and "[a]ny contract for the protection of trade secrets" from prohibition on non-compete covenants); *Harvey Barnett*, 338 F.3d at 1133 (where trade secret is at issue, non-compete covenant is enforceable); *Papa John's*, 2001 WL 1789379, at *3 ("[T]he policy of this state is to enforce [non-compete covenants] unless very serious inequities would result.").

### C. Genscape's remaining state law claims are not preempted.

The remaining state claims are not preempted by the trade secret claims. This district has "rejected the concept of field preemption under Colorado's UTSA." *Virtual Cloud Servs., Inc. v. CH2M Hill, Inc.*, No. 02-cv-01004, 2006 WL 446077, at *2 (D. Colo. Feb. 21, 2006). The UTSA preempts a claim only if it "is no more than a restatement of the same operative facts which would plainly and exclusively spell out trade secret misappropriation." *Abbott Labs. v. Finkel*, No. 17-cv-00894-CMA, 2017 WL 5517399, at *3 (D. Colo. Nov. 17, 2017). The "salient question" is whether the claim "depends *solely* on a finding of trade secret status to be actionable. Where it does not, the claim is not actionable." *Virtual Cloud*, 2006 WL 446077, at *2 (emphasis added).

All of Genscape's state law claims assert that Defendants have misused Genscape's "trade secrets ***and other confidential information***." ECF 1, ¶¶ 70–71, 83–86, 90–93, 96–98, 103–105 (emphasis added). To the extent Defendants contend that any trade secret that Genscape has alleged does not qualify as a trade secret, but is merely confidential information, these counts will

be available to provide Genscape relief. *See Abbott Labs.*, 2017 WL 5517399, at *3 (conversion claim not preempted where plaintiff sought "to recover for [the taking of] confidential information that does not rise to the level of a trade secret or has value 'independent of its value as a trade secret'"). Especially where, as here, Defendants have challenged whether any trade secrets exist, dismissal of the state law claims on the basis that they are preempted by the trade secret claims is inappropriate. Genscape is entitled "to plead in the alternative, even where the alternative claims are inconsistent." *Id.*; *see also Hydropac/Lab Prods., Inc. v. Animal Care Sys., Inc.*, No. 13–cv–00415–MSK–BNB, 2013 WL 12246980, at *3–4 (D. Colo. Oct. 17, 2013).

### D. Genscape has adequately pled its remaining state law claims.

Defendants seek to dismiss the remaining state law claims in a few generic paragraphs claiming that the allegations are "conclusory" and insufficient to state a claim. ECF 15, at 12–14. These halfhearted arguments are without merit. The Complaint "need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Christensen*, 554 F.3d at 1276 (quoting *Twombly*, 550 U.S. at 570). Genscape meets this standard.

#### 1. Genscape has adequately pled its civil theft claim.

Genscape has pled the elements of civil theft under Colo. Rev. Stat. § 18-4-401. Defendants argue that Genscape has not pled that Defendants had the required mental state. ECF 15, at 12. Civil theft requires "(1) that the defendant knowingly obtained control over the owner's property without authorization and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of property." *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000). Genscape alleges that (i) its proprietary trade secrets and other confidential information derive their value from their secrecy; (ii) Defendants obtained, retained and used that information to gain

a head start in the market knowing that it belonged to Genscape; and (iii) Defendants' use deprived Genscape of the benefit of its property. ECF 1, ¶¶ 19, 23–28. Therefore, Genscape contends that "Defendants acted with the specific intent of permanently depriving Genscape of the benefit and value of its property" and "knowingly used Genscape's property in such a manner as to deprive Genscape permanently of its use and benefit." *Id.* ¶ 72. This is plainly sufficient.[5]

### 2. Genscape has adequately pled its conversion claims.

Genscape alleges that Defendants obtained and exercised control over Genscape's trade secrets and other confidential information for their own benefit, ECF 1, ¶¶ 23–26, 84, 91, and that Defendants' exercise of control was a wrongful taking because Defendants knew or had reason to know that Townsend owed Genscape a duty to maintain the secrecy of the information he had learned, *id.* ¶¶ 22–24, 86, 93. These allegations state a claim for conversion.

In asserting that intangible property can be converted only in very limited circumstances, ECF 15, at 12–13, Defendants mischaracterize Genscape's claims. The property that Genscape alleges was converted includes, for example, "lists . . . prioritiz[ing] the best strategic placements for its monitors," "lists of sites that Genscape determined would be difficult or costly to pursue," "the pricing model that the sales team used," and "[d]etailed information . . . track[ing] the extent to which customers accessed and used Genscape data." ECF 1, ¶¶ 17, 26. These allegations are not limited to "intangible" property. Confidential information like that alleged by Genscape can

---

[5] In *Procom Supply, LLC v. Langner*, No. 12-cv-00391-MSK-KMT, 2012 WL 4856724 (D. Colo. Oct. 11, 2012), the only case cited by Defendants, the plaintiff failed to "allege any facts about the circumstances surrounding" the transaction at issue, including "what the investment was," such that the Court "cannot infer . . . that the recipient intended to permanently deprive the Plaintiff of the benefit of the investment." *Id.* at *5. In contrast, Genscape alleges in detail Defendants' use of its confidential information to build LPI's business and capture market share from Genscape.

constitute the stolen personal property underlying a conversion claim. *See, e.g.*, *Abbott Labs.*, 2017 WL 5517399, at *1–3; *Walshe*, 178 F. Supp. 3d at 1094–95.

Defendants also argue that conversion requires the refusal of a demand that the stolen property be returned. ECF 15, at 13. But where the taking of property is wrongful, "the tort of conversion is complete upon that taking; the victim does not have to demand return of the goods nor does the wrongdoer have to refuse such a demand." *Walshe*, 178 F. Supp. 3d at 1095. LPI took Genscape's property wrongfully because Genscape never authorized LPI to access it. ECF 1, ¶¶ 23, 25–26, 84–86. Townsend wrongfully took the property with him when he left Genscape, in violation of his contractual obligations and his duty to maintain the secrecy of Genscape's information. *Id.* ¶¶ 24, 26, 91–93.

### 3. Genscape has adequately pled its fiduciary duty claims.

Genscape has pled its fiduciary duty claims sufficiently. After an agency relationship ends, the agent "owes a continuing duty not to use or disclose confidential information obtained during the course of the agency." *Boettcher DTC Bldg. Joint Venture v. Falcon Ventures*, 762 P.2d 788, 790 (Colo. App. 1988). Genscape has alleged that Townsend breached this fiduciary duty after leaving Genscape, and that LPI aided and abetted his breach. ECF 1, ¶¶ 95–107.

Focusing on the fiduciary duty of *loyalty*, Defendants contend that Genscape has failed to plead its fiduciary duty claims because "the Complaint alleges no facts suggesting that Townsend solicited any of Genscape's customers or disclosed any confidential information *while employed by Genscape*." ECF 15, at 14 (emphasis added). But Genscape has alleged that Townsend breached his fiduciary duty of *confidentiality* to Genscape when he became employed by LPI and began misusing Genscape's confidential and trade secret information. The fiduciary duty of

14

confidentiality persists after employment ends; the duty of loyalty does not. *Boettcher*, 762 P.2d at 790. The case that Defendants cite is irrelevant as it only discusses "an employee's duty of **loyalty**." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 & n.10 (Colo. 1989) (emphasis added).

### E.     If the Court dismisses any claims, it should do so without prejudice.

The claims in the Complaint are more than adequately pled. In the event the Court finds that additional detail is required, however, any dismissal should be without prejudice. *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) ("As a general matter, a party should be granted an opportunity to amend his claims prior to a dismissal with prejudice.").

Defendants suggest without any supporting law that the Complaint should be dismissed with prejudice because this is Genscape's second lawsuit against LPI. ECF 15, at 14–15. But Genscape voluntarily dismissed the prior complaint under Rule 41(a)(1)(A)(i). The "effect of the filing" of such a dismissal "is to leave the parties as though no action had been brought." *Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003). Moreover, as Judge Wang recognized, the two cases present a "divergence in legal theories." ECF 30, at 4–5. Since Genscape has never before made the claims that it brings here, it has never been permitted any opportunity to amend its claims. Furthermore, Defendants do not even suggest—because they cannot—that amendment would be futile. "[D]ismissal with prejudice is appropriate only if 'it would be futile to allow the plaintiff an opportunity to amend his complaint.'" *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-cv-02240-PAB-DW, 2013 WL 4052024, at *9 (D. Colo. Aug. 12, 2013) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). It would not be futile here.

### CONCLUSION

Genscape respectfully requests that the Court deny Defendants' motion to dismiss.

DATED this 7th day of January, 2019.    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Jessamyn S. Berniker*
　　　　　　　　　　　　　　　　　　　　　　　　Jessamyn S. Berniker (D.C. Bar # 482907)
　　　　　　　　　　　　　　　　　　　　　　　　Amanda M. MacDonald (D.C. Bar # 498538)
　　　　　　　　　　　　　　　　　　　　　　　　Matthew B. Underwood (D.C. Bar # 1030122)
　　　　　　　　　　　　　　　　　　　　　　　　D. Shayon Ghosh
　　　　　　　　　　　　　　　　　　　　　　　　WILLIAMS AND CONNOLLY LLP
　　　　　　　　　　　　　　　　　　　　　　　　725 Twelfth Street N.W.
　　　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　　　　　　　Phone: (202) 434-5321
　　　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 434-5029
　　　　　　　　　　　　　　　　　　　　　　　　jberniker@wc.com
　　　　　　　　　　　　　　　　　　　　　　　　amacdonald@wc.com
　　　　　　　　　　　　　　　　　　　　　　　　munderwood@wc.com
　　　　　　　　　　　　　　　　　　　　　　　　sghosh@wc.com

　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 7, 2019, a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS COMPLAINT** was filed with the Clerk of Court using the CM/ECF system which will serve such filing on the following:

Timothy M. Reynolds
BRYAN CAVE LEIGHTON PAISNER LLP
1801 13th Street, Ste. 300
Boulder, CO 80302
Telephone: 303-444-5955
timothy.reynolds@bclplaw.com

Erin A. Kelly
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone: (303) 861-7000
erin.kelly@bclplaw.com

*/s/ Jessamyn S. Berniker*